IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL OAK,

    Petitioner,                  No. CIV S-08-1005 GEB GGH P

   vs.

D.K. SISTO, et al.,                FINDINGS AND RECOMMENDATIONS

    Respondents.

_____/

## INTRODUCTION

Petitioner, a state prisoner proceeding pro se, has filed a petition pursuant to 28 U.S.C. § 2254. Petitioner pled guilty to second degree murder in 1987 and is serving a state prison term of 15 years to life. He challenges the August 17, 2006 decision by the Board of Parole Hearings (hereinafter "Board") finding him unsuitable for parole. Petitioner claims that the Board's action was not supported by "some evidence" and therefore violated his right to federal due process. Upon careful consideration of the record and the applicable law, the undersigned will recommend that the petition for habeas relief be denied.

/////

/////

/////

1

# PROCEDURAL AND FACTUAL BACKGROUND

I. Offense and Plea

In its unpublished memorandum and order affirming the Board's 2006 decision, the Court of Appeal, Fourth Appellate District, provided the following factual summary:

> In 1987 Darryl Oak pleaded guilty to second degree murder of Donald Karstetter (Karstetter), his stepfather. The court sentenced Oak to 15 years to life in state prison.
>
> . . .
>
> The facts of the crime are: Karstetter gave Oak a ride to his apartment on the afternoon of March 15, 1987. Two border patrol agents heard screaming coming from the apartment parking lot. They saw Karstetter holding his abdomen and Oak holding a knife. One agent drew a gun and ordered Oak to drop the knife and get down. Karstetter died as a result of being stabbed six times with a 10-inch knife. Oak had drawn a knife on his brother in January 1986 which resulted in his arrest and hospitalization.

(Answer, Ex. D at 1-2.)

When questioned about his crime at the 2006 parole hearing, petitioner was asked whether he had "had any kind of words with Mr. Karstetter" or any dispute with him prior to stabbing him. Petitioner answered that he had not.

> Presiding Commissioner Garner: Any indication that Mr. Karstetter was in possession of any kind of a weapon?
>
> Inmate Oak: No, sir.
>
> Presiding Commissioner Garner: And was there anything that Mr. Karstetter said that caused this crime to occur?
>
> Inmate Oak: No, sir.
>
> Presiding Commissioner Garner: And let me then ask what was going on that caused you to stab him?
>
> Inmate Oak: Um, I don't believe I actually remember stabbing. . . . I saw this blood coming out of him, and I looked and there was a knife in my hands, so I assumed I did it[.]

(Id. at 17-18.) However, petitioner also stated that, during the 10 to 12 years Mr. Karstetter had been his stepfather, "there was a little bit of violence and there was some bad blood. . . . And this last time I saw him, [on the day of the killing], he had been beating on my mother, she had black eyes, and the house was half-way destroyed . . . And that's the only thing I think – I think I could possibly snap." (Id. at 20-21.) Similarly, in his memorandum accompanying the instant petition, petitioner states: "The murder was the result of Petitioner snapping over the severe beating, Petitioner's stepfather gave to Petitioner's mother earlier that day." (Ptn., Attached Memo. at 8.)

II. 2006 Board Hearing

On August 17, 2006, following a hearing, the Board determined that petitioner was not suitable for parole and would pose an unreasonable risk to society if released from prison. (Answer, Ex. D at 56.) Explaining the factors underlying its decision, the Board found that petitioner's crime "was carried out in an especially cruel and callous manner." (Id. at 57.) It noted that alcohol had been a factor in petitioner's commitment offense, and found that petitioner had not "sufficiently participated in beneficial self-help programs such as AA or NA," even though this had been consistently recommended by the Board and petitioner's psychologist. (Id; see id. at 31-32 (discussing petitioner's lack of participation in self-help programs).)

The Board further described its reasons for denying parole as follows:

> As far as your misconduct, . . . you've had 20 128(a) counseling chronos, the last being October 8, 2005, for refusing a direct order. And you've had 12 115 disciplinary reports, the last being September 10, 1996 and this was for a failure to appear . . . for a work assignment. So as far as the psychological report that was prepared by Dr. Rouse in July of 2006, the Panel noted that the report is unfavorable and that he concludes that you continue to have at least, in his opinion, some distortion in your thinking processes and your thought content. You haven't dealt adequately with the issue of substance abuse. As a result, your current risk assessment for dangerousness is higher than that of those inmates who have committed similar offense[s] and have been successful parolees into the community. . . . So far as your parole plans, nothing was presented to the Panel today for our consideration. . . .

3

1  (Id. at 58-59; see id at 36-37 (discussing petitioner's disciplinary convictions while in prison); id.
2  at 38-39 (discussing psychologist Rouse's report); id. at 42-43 (discussing petitioner's past
3  cocaine use and drinking habits, including petitioner's admission that he "drank at least a case of
4  beer not more than five hours before" killing his stepfather); id. at 19-20 (discussing petitioner's
5  parole plans).)  The Board also noted "issues concerning mental instability" as a factor in
6  denying parole.  (Id. at 58; see id. at 46-47 (discussing petitioner's history of refusing psychiatric
7  medications and his prior psychiatric hospitalizations.)

8        At various points during the hearing, the Board noted positive factors bearing on
9  petitioner's suitability for parole.  These included petitioner's lack of prior convictions, either as
10 an adult or as a juvenile (id. at 58), his disciplinary record showing no 115 rule violations since
11 1996 (id. at 37), and the fact that, in the various jobs petitioner held while in prison, he had
12 received mostly satisfactory grades.  (Id. at 31.)

13       However, the Board concluded that petitioner was not yet suitable for parole and
14 issued a four-year denial at the conclusion of the hearing.  (Id. at 61.)

15 III.  Habeas Proceedings

16       On May 31, 2007, petitioner filed a petition for writ habeas corpus in the San
17 Diego County Superior Court, seeking relief from the Board's 2006 decision.  (Answer, Ex. A.)
18 On July 25, 2007, the superior court denied the petition in a reasoned decision.  (Answer, Ex. B.)
19 On October 12, 2007, petitioner presented the same claims for habeas relief to the California
20 Court of Appeals, Fourth Appellate District.  (Answer, Ex. C.)  On February 14, 2008, the court
21 of appeal denied petitioner's claims in a reasoned opinion.  (Answer, Ex. D.)  On February 25,
22 2008, petitioner sought habeas relief from the Board's 2006 decision in the California Supreme
23 Court (Answer, Ex. E), which summarily denied the petition on April 23, 2008.  (Answer, Ex. F.)

24       Petitioner filed the instant petition on May 8, 2008.  (Doc. 1.)  Respondent filed
25 an answer to the petition on June 27, 2008.  (Doc. 8.)  On February 11, 2008, this action was
26 administratively stayed pending the Ninth Circuit's decision in Hayward v. Marshall, 603 F.3d

546 (9th Cir. 2010). (Doc. 14.) The undersigned lifted the stay on July 13, 2010. (Doc. 19.) On August 9, 2010, petitioner filed a traverse. (Doc. 20.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy

between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated

awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II.     Petitioner's Claim

Petitioner claims that the Board's denial of parole in 2006 was not based on "some evidence" in violation of his federal right to due process.[1] He restates this claim in

---

[1] The instant action concerns the Board's third denial of parole to petitioner in August 2006. In his traverse, petitioner purports to also challenge the Board's fourth denial of parole at a hearing which took place after the filing of the instant petition. (Traverse at 2.) However, petitioner may not proceed in a single federal habeas petition to challenge both parole denials.

7

various ways – e.g.., that the Board denied parole "primarily on the commitment offense" and "demonstrate[d] systematic bias in their decisionmaking" – but its gravamen is that the Board's decision lacked sufficient support in the record before it.[2] (Ptn. at 5; id., Attached Memo. at 3-14, 19-25.)

In the last reasoned state court decision to address petitioner's due process claim,[3] the California Court of Appeal rejected petitioner's argument, reasoning as follows:

> Oak claims the Board's decision is not supported by the evidence. He contends he was denied due process because the Board characterized his offense as first degree murder.
>
> The Board is the administrative agency within the executive branch that generally is authorized to grant parole and fix release dates. (In re Rosenkrantz (2002) 29 Cal.4th 616, 653.) The Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen. Code §

---

See Fed. Rules Governing Section 2254 Cases, Rule 2(e); see also, Magwood v. Patterson, 130 S. Ct. 2788, 2798 (2010); Mansanares v. Arpaio, 2009 WL 1456858 *1 n. 1 (D. Ariz. May 21, 2009). Nor is there any evidence that petitioner has exhausted state remedies for the Board's latest denial of parole.

[2] Petitioner also asserts that the Board's 2006 decision violated the terms of his 1987 plea agreement in which he pleaded guilty to second degree murder. (Ptn. at 6; id., Attached Memo. at 15-18.) As respondent notes, the superior court "interpreted Oak's petition to contain only a single claim that his parole denial was not supported by some evidence" (Answer at 2; see id., Ex. B), as did the court of appeal. (Id., Ex. D.) Insofar as he attempts to allege a separate breach of contract claim, petitioner argues that his 1987 "plea to murder cannot be interpreted as other than an exchange for the guarantee of parole." (Ptn., Attached Memo. at 16.) However, as no other information concerning petitioner's plea agreement nor a copy of the agreement has been entered into record before this court, the court cannot meaningfully address this claim, but simply notes that a standard plea agreement in California involving indeterminate sentences does not in any way "guarantee" a grant of parole within a certain time. See CAL. CODE REGS. tit.xv, § 2402(a) ("[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.")

[3] Respondent for unstated reasons treats the superior court's July 25, 2007 decision as the "last reasoned state court decision" subject to AEDPA review (see Answer at 7-8), noting merely that the court of appeal's February 14, 2008 "decision was similar to that of the superior court, and emphasized Oak's history of mental illness." (Id. at 2.) Because the court of appeal itself issued a reasoned decision, the undersigned reviews that decision under the AEDPA standard.

8

> 3041, subd. (b).)  "Parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and regulation." (In re Rosenkrantz, supra, 29 Cal.4th at p. 654.)
>
> "So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by 'some evidence' in the record before the Board [citation], the overriding statutory concern for public safety in the individual case trumps any expectancy that the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders." (In re Dannenberg (2005) 34 Cal.4th 1061, 1084.)
>
> . . .
>
> The record shows that the Board considered Oak's lack of a criminal history prior to the murder and Oak's hospitalizations for mental problems since age five.  The Board noted Oak had a high school diploma but had not participated in group activities.  He worked mainly in office services.  Oak did have a vocation certificate in janitorial services and he completed one unit of AA.
>
> Oak explained he got "very emotional" at self-help programs and did not think it was in his best interest to attend.  The Board considered the psychological report by John Rouse, Ph.D., that stated Oak had a major depressive disorder with psychotic features and a personality disorder.  Dr. Rouse stated that Oak had some distortion in his thinking processes and in his thought content and had not dealt adequately with his substance abuse problem.  The Board noted that Oak had various disciplinary actions in prison, including fighting in 1996.  His last discipline was in 2005 for refusing an order.  Oak had no residential plans or family support if he were released on parole.
>
> The record shows the Board considered the pertinent criteria and the decision to deny Oak a parole date is supported by the evidence.

(Answer, Ex. D at 2-3.)

The Ninth Circuit has set forth the standards which govern review of denial of parole eligibility cases when the issue centers on whether there was "some evidence" that a potential parolee would constitute a present danger to public safety.  Under the traditional

1  analysis prior to Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit

2  parole eligibility cases determined first that the California parole eligibility statute created a

3  federal liberty interest, and then determined the process due from a federal perspective.  See e.g.,

4  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir 2003) determining that Cal. Penal Code § 3041's

5  "mandatory" language created the federal interest.  Forsaking the previous analysis, Hayward

6  focused on one facet of the process due under state law – "some evidence" – and held that this

7  facet of due process itself created the authority of the federal courts to adjudicate in habeas

8  jurisdiction, which facet did not even have to be federally derived, i.e., that the federal courts

9  could enforce the state standard in the first instance.  Hayward further demurred from finding that

10  a federal liberty interest in application of the "some evidence" standard was created:

> [C]ourts in this circuit...need only decide whether the California judicial decision approving...the decision rejecting parole was an "unreasonable application" of the *California* "some evidence" requirement, or was based on an unreasonable determination of the facts in light of the evidence.

Hayward v. Marshall, 603 F.3d at 562-563 (emphasis added).  See also Pearson v. Muntz, 606 F.3d 606 (9th Cir. 2010) (per curiam); Cooke v. Solis, supra, 606 F.3d 1206.[4]

---

[4] Hayward is, of course, the law in this Circuit and must be followed.  However, its decision to forego an analysis on whether a federal liberty interest created by state law creates a *federal* due process right to a "some evidence" standard, because the federal courts can in any event require adherence to a *state* standard, is "fingernails on the chalkboard" in habeas jurisprudence.  The Supreme Court has constantly admonished that federal courts in habeas corpus jurisdiction do not sit to enforce state law requirements.  Estelle v. McGuire, 502 U.S. 62, 67, 72-73, 112 S.Ct. 475 (1991).  Rather, if state law has created a liberty interest under the federal Constitution, the process due on account of that federal interest is determined by federal law.  In other words, the federal liberty interest created by state law does not constitutionalize the entire state process underlying the state law creating the liberty interest – federal law determines the minimum due process standards applicable to the interest.  Moran v. Godinez, 57 F.3d 690, 698 (9th Cir. 1994).  See also Rivera v. Illinois, __U.S.__, 129 S. Ct. 1446, 1454 (2009): "'The Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."' ; see e.g., Greenholtz v. Inmates of Nebraska etc., 442 U.S. 1, 14, 99 S.Ct. 2100 (1979) (determining the federal process due, after finding state law created a liberty interest, under the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893 (1978); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974) (same).  Of course, state provided process may dovetail with federal due process requirements, but state process is not adopted in full simply because it underlies the state created liberty interest.  Thus, while the  "some evidence" state standard may mirror the need for

First, the undersigned determines that a record review of a state habeas decision based on "some evidence" as the controlling factor is a question of law subject to AEDPA deference under § 2254(d)(1). Hayward provided for such a review in its alternative analysis of the standards of review quoted above. Secondly, and significantly, review of a record to determine if an evidentiary standard has been met, e.g., "some evidence," "sufficient evidence," "substantial evidence," has almost invariably been considered a question of law. See John Kelly v. C.I.R., 326 U.S. 521, 528 (n.7), 66 S.Ct. 29 (1946); Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17 (1919); United States v. Sotelo-Murillo, 887 F.2d 176, 179 (9th Cir. 1989); Suetter v. United States, 140 F.2d 103 (9th Cir. 1944); In re Lazor, 172 Cal.App.4th 1183, 1192 (2009).

Secondly, because the Ninth Circuit has commanded a review of the state's application of its law in this parole eligibility habeas context, despite its incongruity in other habeas settings, the guiding definitions of what is entailed by "some evidence" must be found in state law. With later "clarification," that standard is defined by In re Rosenkrantz, 29 Cal. 4th 616, 677, 128 Cal. Rptr. 2d 104 (2002): "Only a modicum of evidence is required." It is "[i]rrelevant...that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." Because some state (and federal) courts had "misinterpreted" Rosenkrantz to require only that some evidence exist disfavoring parole in any of the eligibility factors to be considered, and that the original commitment offense itself could be the total "some evidence" if the offense exhibited characteristics "more than minimally needed to convict for the offense," In re Lawrence, 44 Cal. 4th 1181, 82 Cal.Rptr. 3d 169 (2008), clarified that the "some evidence" had to be related to the overarching requirement of safety to

---

a federal counterpart, seemingly, the correct analysis would determine this need from a federal perspective in the first instance utilizing Mathews. Moreover, the federal liberty interest in parole eligibility is established by Cal. Penal Code § 3041 recognizing a right to parole if the public safety would not be endangered, cf Greenholtz, not the subsidiary state standards and procedures involved with the liberty interest such as "some evidence," notice requirements, witness availability, or right to counsel.

the community. Id. at 1191 and 1212. Moreover, immutable circumstances, such as the nature of the offense, could not qualify as "some evidence" unless there was something else in the record indicating that those circumstances would *presently* be predictive of dangerousness if released. Id. at 1221. Finally, a BPH "hunch or intuition" was insufficient to stand as "some evidence."

Using California law to decide the some evidence issue herein, the undersigned finds that the state court decision reasonably determined that the Board's 2006 decision was based on "some evidence." Ample evidence in the record suggests that petitioner was not a suitable candidate for parole in 2006. When questioned at the hearing, he showed virtually no insight into his crime, which was violent. If the beating of his mother was the provocation and even petitioner is not sure of this, petitioner apparently still does not understand the accepted ways of remediating this provocation, i.e., call the police. His most recent psychological report indicated that he had ongoing serious mental health issues and posed a greater risk to society than inmates who had committed similar crimes and paroled successfully. Petitioner committed his crime after heavy drinking, yet had not sufficiently participated in AA or other self-help programs while in prison. His parole plans were abstract at best, with no job or housing lined up. He had various disciplinary actions while in prison, most recently in 2005. The combination of these factors unquestionably constitutes "some evidence" that petitioner's release in 2006 would have posed a danger to society. Thus, petitioner should be denied habeas relief on this basis.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus (Doc. 1) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/17/2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:014
oak1005.fr